IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CHRISTOPHER SHAWN MOORE, ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> SHERIFF ALISSA A. GREGORY, ) <br> *Defendant*. ) <br> ) | Civil Action No. 3:23-cv-370 (RCY) |

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's Motion to Amend Complaint ("Motion to Amend"), ECF No. 27. The issues have been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the following reasons, the Court will grant the Motion to Amend.

### I. FACTUAL BACKGROUND

Plaintiff Christopher Shawn Moore ("Moore" or "Plaintiff") is "a male Caucasian" who worked for Henrico County for approximately 28 years. Compl. ¶¶ 3, 7, ECF No. 1. Defendant Sheriff Alisa A. Gregory is an African American female and the elected Sheriff of Henrico County. *Id.* ¶ 4.

For the final three years of his employment with Henrico County, Moore worked for the Sheriff's Office as a Court Supervisor. *Id.* ¶ 8. In the last two of those years, Moore held the rank of Sheriff Lieutenant. *Id.* ¶ 9. As a Court Supervisor, Moore "supervised the courtroom deputies working in the Henrico County Circuit Court, Juvenile and Domestic Relations District Court, and General District Court" and "assisted with the daily operations of the circuit" in its fifteen courtrooms. *Id.* ¶¶ 12–13. Moore alleges that "[i]t was outside the scope of his job duties and

responsibilities to raise concerns about management of funds and salaries of employees with Sheriff Gregory." *Id.* ¶ 14.

On August 16, 2021, Robyn M. de Socio ("de Socio"), Executive Secretary of Virginia's Compensation Board, notified all Sheriffs and Regional Jail Superintendents that the General Assembly approved funding for $3,000 bonus payments for Compensation Board-funded sworn sheriffs, deputies, and regional jail officers. *Id.* ¶ 16; *see also* Compl. Ex. 1, ECF No. 1-2 (Aug. 16, 2021 de Socio Mem.). De Socio advised localities to implement the bonus by November 30, 2021. Compl. ¶ 17; *see also* Compl. Ex. 2, ECF No. 1-3 (Aug. 27, 2021 de Socio Mem.).

In mid-November 2021, Moore learned that jurisdictions surrounding Henrico County— including the Counties of Hanover, Chesterfield, and New Kent, and the City of Richmond—had distributed the mandated $3,000 bonus from the Compensation Board. Compl. ¶ 18. Moore's staff deputies asked him when they would be receiving their bonuses, and Moore told his staff he would inquire with Sheriff Gregory. *Id.* ¶ 19. On November 15, 2021, Moore met with Chief of Staff of the Sheriff's Office Michelle Mitchell ("Mitchell") and asked about the status of the bonus on behalf of his staff. *Id.* ¶ 20. Mitchell told Moore she would have an answer for him the next day. *Id.*

On November 17, 2021, Sheriff Gregory sent an e-mail to all employees, attaching a letter dated November 15, 2021, from the County Manager of Henrico County, John A. Vithoulkas ("Vithoulkas"), addressed to de Socio. *Id.* ¶ 22. The letter stated that, rather than paying the $3,000 bonuses in a lump-sum, "the Henrico County Board of Supervisors leveraged those funds intended for one-time bonuses to provide <u>permanent</u> salary increases that <u>well exceed $3,000</u>." Compl. Ex. 3 at 2, ECF No. 1-4 (Sheriff Gregory "Information Concerning State Funded Bonuses" Email) (emphasis in original). In Sheriff Gregory's email, she noted that if anyone had any

questions or concerns surrounding the bonus funding outlined in Vithoulkas's letter, to "feel free to contact [her]." *Id.* at 1. Moore asserts that, contrary to the letter, the salary increases were not related to the same funds associated with the $3,000 bonuses and that there is no evidence that Henrico County ever accepted the bonus funds intended for the Sheriff's Office from the Compensation Board. Compl. ¶ 24.

On the evening of November 17, 2021, Moore responded to Sheriff Gregory's email, raising his and his staff's concerns about Vithoulkas's letter and the distribution of funds provided by the General Assembly. *Id.* ¶ 25. Moore's email, under the subject line "Re: Information Concerning State Funded Bonuses," read:

> Good evening Sheriff Gregory. I appreciate you sharing this letter from the Manager with us. It is very enlightening about his view on the bonuses. However, there are some issues about his theory that we, or at least I, would like to discuss with him. The issues include the fact that our raises were approved well in advance of the latest ARPA mandate passed in April, 2021. These were funds distributed to those of us that worked in the face of the Pandemic and never let the County go a single day without services from our brave staff. Not to mention the fact that the raises simply got us to a point where our salaries are at least competitive with surrounding Counties, and also rewarded us for our longevity and tenure with the County we are so dedicated to. Nothing in our raises was related to the risks that we faced by coming to work in the Courts and in the jails during COVID, which is what the mandated bonuses are designed to make up for. We missed two similar bonuses rewarded by the ARPA in 2020 that others got, and County Leaders did not even know the latest one was coming before it was proposed in the Legislature in April of 2021 and finally approved some time after that.
>
> Now that we are on a level playing field with other Sheriff's Office salaries in the area, we should understand that the status-quo needs to keep up so that we do not fall behind and make our staff feel as though they are short changed and not appreciated for their hard work and dedication. As we see other localities rewarding Deputies according to the mandate, we as Henrico Deputies feel left out and made to think that our County Leaders are putting us on the back burner once again. Especially with one of the localities being Chesterfield… who we were told was the reason our salaries were raised to compete with and that "we will not be outdone!"
>
> In a nutshell Sheriff I know I seem passionate about this subject, but these views are not mine alone. Almost all of my staff in Courts, and many others in the

> department, feel the same way but are afraid to say anything. Numerous members of your office have asked me to speak out for them, and I feel like I owe it to them to at least take it this far. The Manager may totally disagree, and I would expect that. That's why I feel like a public setting and speaking in front of the Board of Supervisors may be the best forum. Yet I would never want to do that without your blessing and approval. You and I go WAY back, so PLEASE let me know if I am overstepping or barking up the wrong tree. You know I don't mind speaking up for what I believe in, but in the end I have the utmost respect for you and value your opinion. I would NEVER do anything to bring disrespect to you or this Office, will defer [sic] to your judgment on how to proceed. I know that speaking out about this or even requesting to meet with the Manager is unprecedented at my level, and I will accept your advice should you not want me to pursue this for my people any further. Let me know your thoughts, and maybe we could talk about this when you have time. I will not do anything until I hear from you. Thanks so much for your time, and have a GREAT evening!
>
> Lt. C.S. Moore
> Courts Lieutenant
> . . . .

Compl. Ex. 4, ECF No. 1-5 (Moore E-mail to Sheriff Gregory). In response to Moore's email, Sheriff Gregory requested to meet with Moore in her office the next morning. Compl. ¶ 27.

Moore met with Sheriff Gregory, Chief of Staff Mitchell, and Colonel T. Montague ("Montague") on November 18, 2021. *Id.* ¶ 28. Moore alleges that "Sheriff Gregory, Mitchell, and Montague are all African American." *Id.* At the meeting, Sheriff Gregory asked Moore to explain his email, stating she read the email and took it as a sign of disrespect. *Id.* ¶ 29. Moore apologized and told Sheriff Gregory that he did not intend any disrespect. *Id.* ¶ 30. Moore alleges that Sheriff Gregory stated, "'Why would you question me,' 'I will not be disrespected,' and 'I am a strong black woman and no one in my uniform is gonna disrespect me.'" *Id.* ¶ 31. Sheriff Gregory then left the room. *Id.* ¶ 31. Moore continued to apologize, telling Mitchell and Montague he meant no harm or disrespect. *Id.* ¶ 32.

When Sheriff Gregory returned to the room, she stated that she was tired of being disrespected, and opined that Moore and his staff "wouldn't be questioning Mike Wade [Caucasian

and former Henrico County Sheriff] if he was still [t]here." *Id.* ¶ 35 (first alteration made by Plaintiff in Complaint). "I was the first female to be elected sheriff in this county and the first black female and I deserve better," Sheriff Gregory said. *Id.* Sheriff Gregory then stated: "It's just like Black Lives Matter. When they were protesting then got sprayed with mace and shot with rubber bullets. That's how I feel." *Id.* ¶ 36. Montague nodded his head in agreement. *Id.* Moore apologized again, saying he was only seeking guidance as to what to tell his staff to respond to their concerns. *Id.* ¶ 37. Moore referenced prior conversations with Mitchell about the funding and asked that Sheriff Gregory or Montague speak with the deputies to put the matter to rest. *Id.* ¶¶ 38–39. Sheriff Gregory then dismissed Moore back to his work. *Id.* ¶ 40.

Sheriff Gregory summoned Moore back to her office later that same day. *Id.* ¶ 41. Montague met Moore in the lobby and asked Moore to secure his weapon in a gun box before meeting with Sheriff Gregory, Mitchell, and Montague. *Id.* ¶¶ 42–44. Sheriff Gregory presented Moore with a signed letter stating that she was terminating his appointment immediately. *Id.* ¶ 45. Moore asked if he could speak, and Sheriff Gregory said "No." *Id.* ¶ 46. Moore asked Sheriff Gregory if he could be allowed to retire instead "out of respect for [his] 28 years of service." *Id.* ¶¶ 46–47. Sheriff Gregory granted his request, and Moore then drafted a retirement memorandum, which he alleges was "involuntary" and made "under duress." *Id.* ¶¶ 48–49.

One week later, Sheriff Gregory filled Moore's former position with Lieutenant Joan Hunter, an African American female. *Id.* ¶ 50. Moore avers that Lieutenant Hunter had previously been removed as Court supervisor under former Sheriff Mike Wade due to allegations that she assaulted another staff member. *Id.* ¶ 51.

Moore further alleges that "Sheriff Gregory did not discipline or terminate the employment of African American employees that raised similar concerns [to those he raised] with her . . . ." *Id.*

5

¶ 52. Moore identifies six African American employees who he alleges raised similar issues regarding the bonuses or regarding raises more generally and had no disciplinary action taken against them. *Id.* ¶¶ 53–56, 58.

## II. PROCEDURAL HISTORY

Moore filed his Complaint on June 7, 2023, alleging two counts: Count I, for discrimination on the basis of race in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), against Sheriff Gregory in her official and individual capacities; and Count II, for retaliation for protected speech under the First Amendment, pursuant to 42 U.S.C. § 1983, against Sheriff Gregory in her individual capacity. Compl. ¶¶ 59–86, ECF No. 1.

Sheriff Gregory timely filed a Motion to Dismiss, ECF No. 9, on July 14, 2023, and the parties completed briefing the motion on August 3, 2023. *See* Pl.'s Resp. Opp'n, ECF No. 12; Def.'s Reply, ECF No. 13. The Court held an Initial Pretrial Conference on September 20, 2023, and Sheriff Gregory subsequently filed an Answer to the Complaint, ECF No. 16, on October 12, 2023, pursuant to the Court's scheduling order.

On December 22, 2023, Moore filed a Motion to Amend Complaint, ECF No. 27, seeking to file a First Amended Complaint ("FAC"), ECF No. 28-1, which alleges few additional facts but adds a third count, a claim for racial discrimination[1] in violation of 42 U.S.C. § 1981, *see* FAC ¶¶ 75–81. Moore contemporaneously filed a Memorandum in Support, *see* ECF No. 28. Sheriff Gregory filed her Response in Opposition on January 4, 2024, *see* ECF No. 29, and Moore filed his Reply on January 9, *see* ECF No. 30.

---

[1] Though labeled as merely "Racial Discrimination in Violation of 42 U.S.C. § 1981" in the count heading, many of the supporting allegations beneath the heading plead discrimination as both race "and" sex based or alternatively race "and/or" sex based. FAC ¶¶ 78–80. However, in briefing the Motion to Amend, Plaintiff withdrew any putative sex-based discrimination claim, *see* discussion *infra* Part IV.C., and so the Court considers the newly added count as simply a claim for race-based discrimination pursuant to § 1981, in accordance with its heading.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave" to amend "when justice so requires." The Supreme Court has emphasized that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In accord, the Fourth Circuit's policy is to "liberally allow amendment." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citing *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). Thus, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

### IV. DISCUSSION

Plaintiff moves to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Defendant's position is that the Court should deny the Motion because the amendment is futile, made in bad faith, and would severely prejudice her. *See* Def.'s Resp. 3, ECF No. 29. The Court is not persuaded and will thus grant the Motion to Amend.

**A. Futility**

Defendant first argues that amendment to add the new 42 U.S.C. § 1981 claim would futile. Def.'s Resp. 3–5. The Court is unconvinced.

42 U.S.C. § 1981 provides in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[2] . . . ." "To prove a § 1981 claim . . . a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the

---

[2] Section 1981 is applicable to racial discrimination against white persons. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287 (1976).

discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006) (citations omitted). The "plaintiff bears the burden of showing that race was a but-for cause of [their] injury." *Comcast Corp. v. Nat'l Assoc. of Afr. Am.-Owned Media*, 589 U.S. ----, 140 S. Ct. 1009, 1014 (2020).

Defendant's sole futility argument is that Plaintiff's § 1981 claim would not survive a motion to dismiss. Def.'s Resp. 4–5. Specifically, Defendant argues that Plaintiff has failed to allege "but-for" causation between his race and his termination because Plaintiff's race-based discrimination allegations are clouded by the "and" and "and/or" references to sex as an additional or alternative cause of his termination. *Id.* "[D]istrict courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citing *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)). When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). All reasonable inferences that can be drawn from the complaint are drawn in the plaintiff's favor. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Still, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

The FAC reiterates the allegations made in the original Complaint about the Plaintiff's post-email meeting with Defendant, Chief of Staff Mitchell, Colonel Montague. *Compare* FAC ¶¶ 32–44, *with* Compl. ¶¶ 30–40, ECF No. 1. The FAC re-alleges that Defendant, who is African American, made race-focused statements toward Plaintiff, who is Caucasian, in response to him asking her about the bonuses. *See* FAC ¶¶ 35–40. The FAC alleges that Defendant opined that Plaintiff would not have questioned Defendant's Caucasian male predecessor about such issues. *Id.* ¶ 39. The FAC claims disparate treatment of Plaintiff based on his race, alleging instances of Defendant treating African American officers differently (i.e., not disciplining them in the way she did Plaintiff) despite those officers raising the same or similar questions with her to those raised by Plaintiff in the email. *Id.* ¶¶ 57–63. The FAC also alleges that Defendant fired Plaintiff and replaced him with Lieutenant Hunter, an African American employee who, Plaintiff suggests, may have been less qualified than Plaintiff given her work history. *Id.* ¶¶ 55–56. And the FAC ties these allegations together to aver that Plaintiff was terminated "because of his race and/or sex," that he would have been treated differently "if he was African American female [sic]," and that he was discriminated against "because of his race and sex." *Id.* ¶¶ 78–80.

Defendant contends that by including allegations regarding sex as a potential cause in his termination, Plaintiff "destroys his [§ 1981] claim." Def.'s Resp. 5. The Court cannot agree. Defendant is correct that "42 U.S.C. § 1981, although applicable to racial discrimination, does not apply to situations of sexual discrimination." *Cornell v. Gen. Elec. Plastics*, 853 F. Supp. 221,

9

223 (S.D.W. Va. 1994) (collecting cases); *cf.* Def.'s Resp. 4. However, all Plaintiff must do is plead enough facts to plausibly allege a "but-for" causal link between his race and the adverse employment action taken against him. *See Comcast Corp.*, 140 S. Ct. at 1014. "[A] cause need not work in isolation to be a but-for cause." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (emphasis in original) (citing *Burrage v. United States*, 571 U.S. 204, 211 (2014)). So, Plaintiff's burden is simply to initially plead "that race was *a* but-for cause of [his] injury," not that it was the sole cause. *See Comcast Corp.*, 140 S. Ct. at 1014 (emphasis added). Based on the FAC's allegations, even if sex was a potential cause in his termination (which Plaintiff now disclaims, *see* Pl.'s Reply 4), that does not, by itself, automatically logically discount race as a "but-for" cause.

Taking the allegations in the FAC as true and viewing them in the light most favorable to Plaintiff, the Court cannot agree with Defendant that that Plaintiff has failed to allege facts sufficient to permit the plausible inference that race was a but-for cause in his (alleged) termination and/or forced retirement. That is not to say that Plaintiff will necessarily succeed on the merits.[3] All the Court holds here is that Plaintiff has plead enough facts for his race-based § 1981 claim to avoid the "futile" tag—as it relates to Defendant's sole, causal objection—at this stage.

## B. Bad Faith

Defendant next argues that Plaintiff's amendment is made in bad faith, requiring denial of the Motion to Amend. Defendant again fails to convince the Court.

Defendant contends that Plaintiff's Motion to Amend was filed in bad faith, as evidenced by the fact that Plaintiff so moved around seven months after filing his original Complaint. *See*

---

[3] Concluding that a complaint's allegations pass Rule 12(b)(6) muster leaves unresolved "contest[s] between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles A. Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice & Procedure* § 1356 (3d ed. 2023 update).

Def.'s Resp. 6.  But in this circuit, "delay alone is not sufficient reason to deny leave to amend. The delay must be accompanied by . . . bad faith" as shown or inferred from the surrounding facts. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir. 1986).

Defendant suggests bad faith is inherent in this delay by likening Plaintiff's amendment at "this late stage" to the "strikingly similar" rejected amendment in *GSS Properties, Inc. v. Kendale Shopping Center, Inc.*, 119 F.R.D. 379 (M.D.N.C. 1988). *See* Def.'s Resp. 6–7.  But *GSS* is readily distinguishable from the facts here.  In *GSS*, prior to amendment being sought, "the parties had stipulated that there was no present need to amend the pleadings."  119 F.R.D. at 381.  Defendant does not allege that Plaintiff made any such representation here.  And though this case and *GSS* might appear similar in the sense that "plaintiff was fully advised of the facts constituting the amendment prior to filing suit in this action," the problem in *GSS* was that the Plaintiff *had not* initially pled those facts and instead had intentionally "with[eld those] facts clearly known to it prior to the filing of the complaint" and only later moved to amend the complaint to add those facts.  *Id.*  *That* is where the court found "bad faith."  *Id.*  Here, there is no credible allegation that Plaintiff withheld any facts and tactically omitted those from his original Complaint to gain some impermissible advantage.  Rather, as Defendant acknowledges, Plaintiff's new § 1981 claim is based primarily on the facts he pled in his original Complaint.  *See* Def.'s Resp. 6.  And the new facts Plaintiff has pleaded were only "uncovered during discovery," specifically as to whether "the Sheriff knew the stated cause of the County's nonpayment of the []bonuses was false;" this impacts the damages available under § 1981 and potentially causation as well.  Pl.'s Reply 6 (citing FAC ¶¶ 24–27, 30).  In short, *GSS* is inapposite.

Given the circumstances here, the Court does not find that Plaintiff acted in bad faith.

11

## C. Prejudice

Lastly, Defendant argues that allowing amendment would result in undue prejudice to her case. But her arguments here are primarily predicated on alleged prejudice resulting from having to defend herself against Plaintiff's "new" sex discrimination theory. Def.'s Resp. 6; *see also id.* at 8 ("In short, Sheriff Gregory is faced with the task of defending a completely new theory of liability—[sex] discrimination . . . .").[4] But as mentioned above, Plaintiff has withdrawn any sex discrimination theory in this case. *See* Pl.'s Reply 4 ("Moore herein withdraws his claim for sex discrimination under § 1981[.]"). So, that is no longer an issue.

None of Defendant's arguments convince the Court that there is the sort of prejudice here that requires overriding the Fourth Circuit's liberal policy of allowing (at least one) amendment.

## V. CONCLUSION

For the reasons set forth above, the Court will heed the mandate that amendment should be freely granted and grant Plaintiff's Motion to Amend.

An appropriate Order shall issue.

/s/ *RCY*
Roderick C. Young
United States District Judge

Richmond, Virginia
Date:  February 12, 2024

---

[4] Defendant used the phrase "gender discrimination," but the FAC uses "sex," not "gender." FAC ¶¶ 79–81.