IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CHRISTOPHER SHAWN MOORE, ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 3:23-cv-370 (RCY) |
| ) | |
| SHERIFF ALISA A. GREGORY, ) | |
| *Defendant*. ) | |
| ) | |

**MEMORANDUM OPINION**

This case is before the Court on Defendant Sheriff Alisa Gregory's ("Defendant" or "Sheriff Gregory") Motion to Dismiss Count II in the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Motion to Dismiss"), ECF No. 40. The matters have been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the following reasons, the Court will grant in part and deny in part the Motion to Dismiss.

**I. FACTUAL BACKGROUND**

Plaintiff Christopher Shawn Moore ("Plaintiff" or "Moore") is "a male Caucasian" who worked for Henrico County for approximately twenty-eight years. First Am. Compl. ¶¶ 3, 7, ECF No. 35 ("FAC"). Defendant Sheriff Alisa Gregory is an African American female and the elected Sheriff of Henrico County. *Id.* ¶ 4.

For the final three years of his employment with Henrico County, Moore worked for the Sheriff's Office as a Court Supervisor. *Id.* ¶ 8. In the last two of those years, Moore held the rank of Sheriff Lieutenant. *Id.* ¶ 9. As a Court Supervisor, Moore "supervised the courtroom deputies working in the Henrico County Circuit Court, Juvenile and Domestic Relations District Court, and

General District Court" and "assisted with the daily operations of the circuit" in its fifteen courtrooms. *Id.* ¶¶ 12–13. Moore alleges that "[i]t was outside the scope of his job duties and responsibilities to raise concerns about management of funds and salaries of employees with Sheriff Gregory." *Id.* ¶ 14.

On August 16, 2021, Robyn M. de Socio ("de Socio"), Executive Secretary of Virginia's Compensation Board, notified all Sheriffs and Regional Jail Superintendents that the General Assembly approved funding for $3,000 bonus payments for Compensation Board-funded sworn sheriffs, deputies, and regional jail officers. *Id.* ¶ 16; *see also* FAC Ex. 1, ECF No. 35-1 (Aug. 16, 2021 de Socio Memorandum). De Socio advised localities to implement the bonus by November 30, 2021. FAC ¶ 17; *see also* FAC Ex. 2, ECF No. 35-2 (Aug. 27, 2021 de Socio Memorandum).

In mid-November 2021, Moore learned that jurisdictions surrounding Henrico County— including the Counties of Hanover, Chesterfield, and New Kent, and the City of Richmond—had distributed the mandated $3,000 bonus from the Compensation Board. FAC ¶ 18. Moore's staff deputies asked him when they would be receiving their bonuses, and Moore told his staff he would inquire with Sheriff Gregory. *Id.* ¶ 19. On November 15, 2021, Moore met with Chief of Staff of the Sheriff's Office Michelle Mitchell ("Mitchell") and asked about the status of the bonus on behalf of his staff. *Id.* ¶ 20. Mitchell told Moore that she would have an answer for him the next day. *Id.*

On November 17, 2021, Sheriff Gregory sent an e-mail to all employees, attaching a letter dated November 15, 2021, from the County Manager of Henrico County, John A. Vithoulkas ("Vithoulkas"), addressed to de Socio. *Id.* ¶ 22. The letter stated that, rather than paying the $3,000 bonuses in a lump-sum, "the Henrico County Board of Supervisors leveraged those funds intended for one-time bonuses to provide <u>permanent</u> salary increases that <u>well exceed</u>

2

$3,000." FAC Ex. 3 at 2, ECF No. 35-3 (Sheriff Gregory "Information Concerning State Funded Bonuses" Email) (emphasis in original). In Sheriff Gregory's email, she noted that if anyone had any questions or concerns surrounding the bonus funding outlined in Vithoulkas's letter, to "feel free to contact [her]." *Id.* at 1. Moore asserts that, contrary to the letter, the salary increases were not related to the same funds associated with the $3,000 bonuses and that there is no evidence that Henrico County ever accepted the bonus funds intended for the Sheriff's Office from the Compensation Board. FAC ¶ 24. Moore goes further and alleges that, rather than accepting the funds, Vithoulkas and Henrico County in fact sought to delay and legislatively exempt Henrico County from the acceptance of the $3,000.00 Compensation Board bonuses, an effort that allegedly succeeded. *Id.* ¶¶ 25–27.

On the evening of November 17, 2021, Moore responded to Sheriff Gregory's email, raising his and his staff's concerns about Vithoulkas's letter and the distribution of funds provided by the General Assembly. *Id.* ¶ 28. Moore's email, under the subject line "Re: Information Concerning State Funded Bonuses," read:

> Good evening Sheriff Gregory. I appreciate you sharing this letter from the Manager with us. It is very enlightening about his view on the bonuses. However, there are some issues about his theory that we, or at least I, would like to discuss with him. The issues include the fact that our raises were approved well in advance of the latest ARPA mandate passed in April, 2021. These were funds distributed to those of us that worked in the face of the Pandemic and never let the County go a single day without services from our brave staff. Not to mention the fact that the raises simply got us to a point where our salaries are at least competitive with surrounding Counties, and also rewarded us for our longevity and tenure with the County we are so dedicated to. Nothing in our raises was related to the risks that we faced by coming to work in the Courts and in the jails during COVID, which is what the mandated bonuses are designed to make up for. We missed two similar bonuses rewarded by the ARPA in 2020 that others got, and County Leaders did not even know the latest one was coming before it was proposed in the Legislature in April of 2021 and finally approved some time after that.
>
> Now that we are on a level playing field with other Sheriff's Office salaries in the area, we should understand that the status-quo needs to keep up so that we do not

3

> fall behind and make our staff feel as though they are short changed and not appreciated for their hard work and dedication. As we see other localities rewarding Deputies according to the mandate, we as Henrico Deputies feel left out and made to think that our County Leaders are putting us on the back burner once again. Especially with one of the localities being Chesterfield… who we were told was the reason our salaries were raised to compete with and that "we will not be outdone!"
>
> In a nutshell Sheriff I know I seem passionate about this subject, but these views are not mine alone. Almost all of my staff in Courts, and many others in the department, feel the same way but are afraid to say anything. Numerous members of your office have asked me to speak out for them, and I feel like I owe it to them to at least take it this far. The Manager may totally disagree, and I would expect that. That's why I feel like a public setting and speaking in front of the Board of Supervisors may be the best forum. Yet I would never want to do that without your blessing and approval. You and I go WAY back, so PLEASE let me know if I am overstepping or barking up the wrong tree. You know I don't mind speaking up for what I believe in, but in the end I have the utmost respect for you and value your opinion. I would NEVER do anything to bring disrespect to you or this Office, will defer [sic] to your judgment on how to proceed. I know that speaking out about this or even requesting to meet with the Manager is unprecedented at my level, and I will accept your advice should you not want me to pursue this for my people any further. Let me know your thoughts, and maybe we could talk about this when you have time. I will not do anything until I hear from you. Thanks so much for your time, and have a GREAT evening!
>
> Lt. C.S. Moore
> Courts Lieutenant
> . . . .

FAC Ex. 8, ECF No. 35-8 (Moore Email to Sheriff Gregory). In response to Moore's email, Sheriff Gregory requested to meet with Moore in her office the next morning. FAC ¶ 31.

Moore met with Sheriff Gregory, Chief of Staff Mitchell, and Colonel T. Montague ("Montague") on November 18, 2021. *Id.* ¶ 32. Moore alleges that "Sheriff Gregory, Mitchell, and Montague are all African American." *Id.* At the meeting, Sheriff Gregory asked Moore to explain the tone of his email, stating she read the email and "t[ook] it as disrespect." *Id.* ¶ 33. Moore apologized and told Sheriff Gregory that he did not intend any disrespect. *Id.* ¶ 34. Moore alleges that Sheriff Gregory stated, "'Why would you question me,' 'I will not be disrespected,'

4

and 'I am a strong black woman and no one in my uniform is gonna disrespect me.'" *Id.* ¶ 35. Sheriff Gregory then left the room. *Id.* ¶ 36. Moore continued to apologize, telling Mitchell and Montague he meant no harm or disrespect. *Id.* ¶ 37.

When Sheriff Gregory returned to the room, she stated that she was "tired of being disrespected," and opined that Moore and his staff "wouldn't be questioning Mike Wade [Caucasian and former Henrico County Sheriff] if he was still [t]here." *Id.* ¶ 39 (first alteration made by Plaintiff in FAC). "I was the first female to be elected sheriff in this county and the first black female and I deserve better," Sheriff Gregory said. *Id.* Sheriff Gregory then stated: "It's just like Black Lives Matter. When they were protesting then got sprayed with mace and shot with rubber bullets. That's how I feel." *Id.* ¶ 40. Montague nodded his head in agreement. *Id.* Moore apologized again, saying he was only seeking guidance as to what to tell his staff to respond to their concerns. *Id.* ¶ 41. Moore referenced prior conversations with Mitchell about the funding and asked that Sheriff Gregory or Montague speak with the deputies to put the matter to rest. *Id.* ¶¶ 42–43. Sheriff Gregory then dismissed Moore back to his work. *Id.* ¶ 44.

Sheriff Gregory summoned Moore back to her office later that same day. *Id.* ¶ 46. Montague met Moore in the lobby and asked Moore to secure his weapon in a gun box before meeting with Sheriff Gregory, Mitchell, and Montague. *Id.* ¶¶ 47–49. Sheriff Gregory presented Moore with a signed letter stating that she was terminating his appointment immediately. *Id.* ¶ 50. Moore asked if he could speak, and Sheriff Gregory said "No." *Id.* ¶ 51. Moore asked Sheriff Gregory if he could be allowed to retire instead "out of respect for [his] 28 years of service." *Id.* ¶ 52. Sheriff Gregory granted his request, and Moore then drafted a retirement memorandum, which he alleges was "involuntary" and made "under duress." *Id.* ¶¶ 53–54.

One week later, Sheriff Gregory filled Moore's former position with Lieutenant Joan Hunter, an African American female. *Id.* ¶ 55. Moore avers that Lieutenant Hunter had previously been removed as Court supervisor under former Sheriff Mike Wade due to allegations that she assaulted another staff member. *Id.* ¶ 56.

Moore further alleges that "Sheriff Gregory did not discipline or terminate the employment of African American employees that raised similar concerns [to those he raised] with her . . . ." *Id.* ¶ 57. Moore identifies six African American employees who he alleges raised similar issues regarding the bonuses or regarding raises more generally and had no disciplinary action taken against them. *Id.* ¶¶ 58–61, 63.

## II. PROCEDURAL HISTORY

Moore initiated this action on June 7, 2023. *See* Compl., ECF No. 1. Moore filed a Motion to Amend Complaint on December 22, 2023, ECF No. 27, which the Court granted on February 12, 2024, *see* ECF Nos. 33, 34.

On February 13, 2024, Moore filed the First Amended Complaint ("FAC"). *See* FAC, ECF No. 35. The FAC alleges three counts: Count I, for discrimination on the basis of race in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), against Sheriff Gregory in her official and individual capacities; Count II, for racial discrimination[1] in violation of 42 U.S.C. § 1981, against Sheriff Gregory in her official and individual capacities; and Count III, for retaliation for protected speech under the First Amendment, pursuant to 42 U.S.C. § 1983, against Sheriff Gregory in her individual capacity. *Id.* ¶¶ 1–2, 64–98.

---

[1] Though labeled as merely "Racial Discrimination in Violation of 42 U.S.C. § 1981" in the count heading, many of the supporting allegations beneath the heading plead discrimination as both race "and" sex based or alternatively race "and/or" sex based. FAC ¶¶ 78–80. However, in briefing on his Motion to Amend, Plaintiff withdrew any putative sex-based discrimination claim, *see, e.g.*, Mem. Op. Mot. Amend., *Moore v. Gregory*, 2024 WL 555887, at *4 n.1, 7 (E.D. Va. Feb. 12, 2024), and so the Court considers this count as simply a claim for race-based discrimination pursuant to § 1981, in accordance with its heading.

On February 20, 2024, Sheriff Gregory filed the instant Motion to Dismiss Count II, *see* ECF No. 40, and a Memorandum in Support, *see* ECF No. 41.  On March 1, 2024, Moore filed his Response opposing the Motion to Dismiss, *see* ECF No. 42.  On March 7, 2024, Sheriff Gregory filed her Reply, *see* ECF No. 44.  This Opinion follows.

### III.  LEGAL STANDARD

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "They possess only such power as is authorized by the Constitution and statute . . . ."  *Id.*  "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (alteration in original) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is the procedural vehicle to tests a court's subject matter jurisdiction over a claim.  Motions under Rule 12(b)(1) fall into one of two categories:  a facial attack or a factual attack on jurisdiction.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  On a facial attack, the movant is arguing that the complaint fails on its face to allege facts on which subject matter jurisdiction can be based.  *Id.*  In such a case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."  *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  So "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Id.*  A factual attack on jurisdiction, on the other hand, challenges the factual allegations underlying the assertion of jurisdiction.  *Id.*  Under either circumstance, the plaintiff carries the burden of proving subject matter jurisdiction.  *See Piney Run Pres. Ass'n v. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459

7

(4th Cir. 2008). Here, Sheriff Gregory challenges the Court's subject matter jurisdiction over Count II under the first method—a facial attack—and asserts that the Eleventh Amendment bars that claim.[2] Def.'s Mem. Supp. 2–3, ECF No. 41.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment, by its terms, applies only to suits brought against a state by "Citizens of another State," the Supreme Court has held that the Amendment renders "an unconsenting State . . . immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).

By extension, the Eleventh Amendment prohibits "not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities"—that is, actions against "arm[s] of the State." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429–30 (1997) (quoting *State Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). In suits against state officials, the key Eleventh Amendment distinction is between suits against officers in (1) their official capacity and (2) their personal/individual

---

[2] The Fourth Circuit has "been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Andrews v. Daw*, 201 F.3d 521, 525 n.2 (4th Cir. 2000). But the "trend" is to view Eleventh Amendment immunity through the lens of Rule 12(b)(1). *See Riddick v. Watson*, 503 F. Supp. 3d 399, 412 n.8 (E.D. Va. 2020) (collecting cases); *cf. Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996) ("In effect, the Eleventh Amendment limits the ability of a federal district court to exercise its subject-matter jurisdiction over an action brought against a state or one of its entities. Although not a true limit on the subject-matter jurisdiction of the federal courts, the Eleventh Amendment is a 'block on the exercise of that jurisdiction.'" (quoting *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995))).

capacity. The Eleventh Amendment bars "suits seeking civil damages against state officers in their official capacity," *Davison v. Plowman*, 247 F. Supp. 3d 767, 780 (E.D. Va. 2017) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984); and citing *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995)), because such a suit "is not a suit against the official but rather is a suit against the official's office," *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)). But "the Eleventh Amendment does not bar suits against governmental officials sued in their personal capacities," *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 229 (4th Cir. 1997) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)), since such suits merely "seek to impose individual liability upon a government officer for actions taken under color of state law," *Hafer*, 502 U.S. at 25.

## IV.  DISCUSSION

This motion is all about Count II of the FAC, Plaintiff's 42 U.S.C. § 1981[3] claim. Plaintiff brings Count II under "42 U.S.C. § 1981 against Defendant, Sheriff Alisa A. Gregory . . . in her individual and official capacities." FAC ¶ 1, ECF No. 35. Defendant argues that this claim is barred by the Eleventh Amendment and thus must be dismissed pursuant to Rule 12(b)(1). *See* Def.'s Mem. Supp., ECF No. 41. The Court agrees with Defendant only in part. Only Plaintiff's official capacity claim for damages will be dismissed.

### A.  Official Capacity Claim

"[A] suit against a constitutional officer of Virginia is, for Eleventh Amendment purposes, to be treated as a suit against the Commonwealth itself." *Davison v. Plowman*, 247 F. Supp. 3d

---

[3] Section 1981 provides, in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). Section 1981 is applicable to racial discrimination against white persons. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287 (1976). "The rights protected by [§ 1981] are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

9

767, 780 (E.D. Va. 2017). Virginia sheriffs are constitutional officers of Virginia. *See* Va. Const. art. VII, § 4; *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 893 (E.D. Va. 1992); *Blankenship v. Warren Cnty.*, 918 F. Supp. 970, 973 (W.D. Va.), *on reconsideration*, 931 F. Supp. 447 (W.D. Va. 1996). Thus, Virginia sheriffs are arms of the Commonwealth of Virginia, and a suit for damages against a sheriff in her official capacity is barred by the Eleventh Amendment. *See, e.g.*, *Savage v. County of Stafford*, 2010 WL 1873222, at *4 (E.D. Va. May 4, 2010) ("[T]he sheriff and his deputies[] are arms of the state and therefore are entitled to Eleventh Amendment immunity when sued in their official capacities."); *Harris v. Hayter*, 970 F. Supp. 500, 502 (W.D. Va. 1997) ("[I]n Virginia, a suit against a sheriff in his official capacity is a suit against a state official. And a suit against a state official in his official capacity is a suit against a state. The state has Eleventh Amendment immunity from any action for damages against it . . . ." (citations omitted)); *Blankenship*, 918 F. Supp. at 974 ("[T]he Sheriff and the Sheriff's Department are arms of the Commonwealth of Virginia and . . . they, therefore, are entitled to invoke the defense of immunity from suit pursuant to the Eleventh Amendment.").

Defendant appropriately invokes her Eleventh Amendment immunity from this official capacity damages claim. Her doing so withdraws the Court's subject matter jurisdiction over this claim for damages. Plaintiff does not even attempt to save this official capacity claim—he does not mention it at all in his Response, focusing only on his individual capacity claim. *See generally* Pl.'s Resp., ECF No. 42.

So insofar as Plaintiff brings a damages claim in Count II against Defendant in her official capacity, Count II will be dismissed without prejudice.[4] To that extent, Defendant's Motion to Dismiss will be granted.

---

[4] Defendant asks the Court to dismiss Count II "with prejudice." Def.'s Mem. Supp. 9. But "when Eleventh Amendment immunity attaches, it should result in a dismissal *without prejudice*." *Andrews v. Taylor*, 2018 WL

## B. Individual Capacity Claim

As a preliminary matter, Defendant argues that Plaintiff is not trying to bring a § 1981 claim against her in her individual capacity at all.  But Defendant's position is belied by what the FAC actually says:  that Plaintiff is pursuing a claim under "§ 1981 against [her] in her individual . . . capacit[y]."  FAC ¶ 1.

And even if Plaintiff had not alleged capacity specifically, an "examin[ation of] the nature of the plaintiff's claims, the relief sought, and the course of proceedings" would show that Plaintiff intends to sue Defendant in her individual capacity.  *See Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).  First, there is no allegation that Defendant acted in accordance with a governmental policy or custom in firing Plaintiff.  *See generally* FAC.  Second, Plaintiff is seeking compensatory and punitive damages.  *See id.* at 13, ¶¶ C, D, E.  "[S]uch relief is unavailable in official capacity suits."  *Biggs*, 66 F. 3d at 61.  And third, Defendant is asserting a qualified immunity defense to Plaintiff's § 1981 claim.  *See* Answer to FAC ¶ 11, ECF No. 37.  Since that defense "is available only in a personal capacity suit, the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against h[er] personally."  *Biggs*, 66 F.3d at 61 (citation omitted).  From these factors, Plaintiff's intention to hold Defendant personally liable can be "ascertained fairly."  *Id.*; *see also, e.g.*, *Ziegler v. Dunn*, 2024 WL 761860, at *3 n.3 (E.D. Va. Feb. 23, 2024).[5]

---

2108022, at *6 (E.D. Va. May 7, 2018) (emphasis added), *cited in* Def.'s Mem. Supp. 2; *see also Fleming v. Va. State Univ.*, 671 F. App'x 117, 118 (4th Cir. 2016) (unpublished per curiam opinion) (citing *S. Walk at Broadlands Homeowner's Assoc., Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013)).

[5] Defendant contends that "under the logic set forth by the Fourth Circuit in *Biggs*," Plaintiff must not be intending to bring his § 1981 claim in Count II against her in her individual capacity, because that claim is very similar to Plaintiff's Title VII claim in Count I, which, Defendant argues (in her contemporaneously filed Motion for Summary Judgment), cannot be against her in her individual capacity.  Def.'s Mem. Supp. 5–6, 6 n.1; *see also* Def.'s Reply 3–4, 4 n.1, ECF No. 45.  Defendant cites no case where a court has cross-pollenated between counts (or motions, for that matter) in the manner that she suggests in undertaking a *Biggs* analysis.  *See generally* Def.'s Mem. Supp. 5–6.  She only cites cases standing for the proposition that the elements of a prima facie case under Title VII and under § 1981 are the same.  *See id.* (citing *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985)).  Nothing in this argument upsets the Court's conclusion that, under a straightforward analysis of the *Biggs* considerations, Plaintiff intends to bring an individual capacity claim under § 1981.  And, of course, the fact that Plaintiff specifically pleaded

Undeterred, Defendant next argues that, even if Plaintiff is *intending* to sue her in her individual capacity on his § 1981 claim, she is *actually* being sued solely in her official capacity. This is so, in Defendant's view, because the substance of Count II reveals that the Commonwealth of Virginia is the true party in interest. The Court disagrees.

"When [a] suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). To be sure, "the mere incantation of the term 'individual capacity' is not enough to transform an official capacity action into an individual capacity action." *Lizzi v. Alexander*, 255 F.3d 128, 137 (4th Cir. 2001), *overruled in part on other grounds by Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003). "The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleadings." *Id.* (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997)). So when a plaintiff states in the complaint that they are bringing an individual capacity suit, a court must determine whether anything "in the remainder of the complaint, or in the record, undermines [that] clear statement" and reveals that the state is the real party in interest. *See Adams v. Ferguson*, 884 F.3d 219, 225 (4th Cir. 2018); *see also Martin v. Wood*, 772 F.3d 192, 196 (4th Cir. 2014) (court should "examine *the substance* of the claims stated in the complaint" to determine the real party in interest (emphasis in original)).

Defendant argues that the Commonwealth of Virginia is the real party in interest because the actions of which Plaintiff complains—her firing him—were taken within her authority as Sheriff. *See* Def.'s Mem. Supp. 9 ("[A]ny alleged wrongdoing by Sheriff Gregory related to Plaintiff's employment separation from the Sheriff's Office is tied to her official duties as

---

that he is bringing this claim against Defendant in her individual capacity only reinforces this conclusion. *See Byrd v. Md. Dep't of Health & Mental Hygiene - State Bd. of Dental Exam'rs*, 2008 WL 11509375, at *8 (D. Md. Apr. 16, 2008).

Plaintiff's superior, the elected Sheriff of Henrico County, and her authority to hire and fire employees at will."). As Defendant puts it, because she "had the authority to terminate Plaintiff," it must be that her "actions were 'inextricably tied' to her official duties at the Sheriff's Office." *Id.* That, in her view, makes this a suit against her office, and thus a suit against the Commonwealth. *Id.*

This argument has failed before and fails again here. "While Defendant apparently did have authority to make personnel decisions such as those at issue here, she did not have authority to make them on the basis of race. Therefore, if she indeed discriminated against Plaintiff on account of his race, she did so in her individual capacity." *Coleman v. McHenry*, 735 F. Supp. 190, 192–93 (E.D. Va. 1990) (Merhige, J.).[6]

The substance of the FAC does not undermine Plaintiff's clear statement that he is bringing Count II against Defendant in her individual capacity. Thus, insofar as Defendant's Motion to Dismiss seeks dismissal of Count II against her in her individual capacity on Eleventh Amendment grounds, the Motion to Dismiss will be denied.

---

[6] Defendant heavily relies on the Fourth Circuit's decision in *Martin v. Wood*, 772 F.3d 192, to argue that the Commonwealth is the real party in interest on Plaintiff's § 1981 claim. *See* Def.'s Mem. Supp. 7–9. In *Martin*, the Fourth Circuit laid out a five-factor inquiry to "identify the real, substantial party in interest" in suits alleging violations of the Fair Labor Standard Act. 772 F.3d at 196. Those factors are: (1) whether the allegedly unlawful actions of the state officials were "tied inextricably to their official duties;" (2) whether, if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) whether a judgment against the state officials would be institutional and official in character, such that it would operate against the State; (4) whether the actions of the state officials were taken to further personal interests distinct from the State's interests; and (5) whether the state officials' actions were *ultra vires*. *Id.*

But Defendant cites no Fourth Circuit case indicating that the *Martin* factors apply in a § 1981 suit. And contrary to any such argument, in *Adams v. Ferguson*, the Fourth Circuit explicitly rejected the applicability of the *Martin* factors to claims under 42 U.S.C. § 1983. *See Adams*, 884 F.3d at 226. The *Adams* panel reasoned that the *Martin* factors, "which focus on the character of the defendant's actions," were "articulated for use in considering claims under a very different statute, and . . . would undermine the very purpose of § 1983." *Id.* The Fourth Circuit recently reiterated this aspect of *Adams* in *Gibbons v. Gibbs*, --- F.4th ----, 2024 WL 1689095, at *3 (4th Cir. Apr. 19, 2024). The Court does not see why the Fourth Circuit would apply the *Martin* factors to § 1981 claims when it would not to § 1983 claims. Sections 1983 and 1981 are "closely related" statutes "dealing with similar subjects," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738 (1989) (Scalia, J., concurring in part and concurring the judgement), both seeking to protect rights from impairment under color of state law, *see* 42 U.S.C. §§ 1981(c), 1983. The Court will not apply the *Martin* factors here.

## V.  CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part Defendant Sheriff Gregory's Motion to Dismiss.

An appropriate Order shall issue.

/s/ RCY<br>
Roderick C. Young<br>
United States District Judge

Richmond, Virginia
Date:  April 24, 2024